Good morning and may it please the court. My name is Eric Glitzenstein and I represent the Plaintiff's Appellant's Highway J Citizens Group, et al., some of whom are in the courtroom today. This case concerns a highway project that is being built or proposed to be built in the Kettle Moraine area of Wisconsin, an area renowned for its rolling hills and largely rural character. Although the project will have adverse impacts, including on the view shed in the area, wetlands, historic properties, farmland, and other attributes, and is vigorously opposed by many members of the community where the project is being built, the Highway Administration did not prepare an environmental impact statement in connection with the project, nor did it even prepare what is referred to in the implementing regulations as an environmental assessment, which is ordinarily the document that is used to evaluate whether impacts are sufficient to require an EIS. Instead, this project was subject to what is referred to as a categorical exclusion from any NEPA review. And as your honors know- I don't think that's entirely accurate, your honor. I said it was a burlesque, but it seems the direction in which your argument is tending. Let me explain why I think our argument is actually different than that. As I indicated under the statutory framework, actually an environmental assessment is ordinarily the document that is used, and this court made that clear in the Rhodes case, as well as a number of other cases. And in terms of the length of the environmental assessment, I have a legal answer, and then what I think will maybe be a more important answer in this case, which is, I think what is the difference? Why does it matter that they prepared this environmental report rather than a more formal NEPA document? On its face, as then Judge Breyer said in the Sierra Club case that we referred to in our brief, preparing this lengthy environmental report to establish that a project does not have sufficiently significant impacts to our NEPA review is a bit like the math professor who fills up an entire blackboard and then announces, you see, it's simple. But without being overly flippant about it, let me get to the heart of Your Honor's question, which is, why does it matter? What's the difference? No, I didn't ask why it matters. Well, I think that— I asked what sense it can make to have a provision for an exception if you can never take advantage of the exception, and that's your argument. And that— It's basically an indirect attack on the very idea of an exception. And let me respond to that, Your Honor, because I disagree with that respectfully. This particular kind of exception is different from other exceptions. And as we set forth in the briefs, it's referred to as a D-list exception. The Federal Highway Administration set forth a number of exceptions in what is referred to as the C-list exceptions, which on their face, if you invoke one of those exceptions, it almost invariably leads to the answer that you do not have a significant impact at one or more of its consideration in EIS or environmental assessment. But that is not the case for D-list exceptions. Mr. Quintinstein, you know, the defendants have pointed out fairly extensive participation in this process, editing, advising, telling the State to conduct further reviews of certain issues. What I've been wondering all along is why that isn't enough. If collaboration is allowed, and it appears that the regulations allow State and Federal collaboration, then why, bottom line, was this process inadequate, whatever you want to call it? Well, let me directly answer that, Your Honor, with regard to, I think, a critical example, and that's the cumulative impacts issue. Many commenters specifically pointed to the potential for projects like this one to have cumulative effects along with other projects that also impact the kinds of resources affected here, but they concede that in this case, both the Federal Government and WSDOT, the Wisconsin Department of Transportation, acknowledge that in this case, neither of them and the environmental report did not look at all at cumulative effects, and they claim that the was because they categorically excluded the project from NEPA review, but if you look at the plain terms of the regulations that they're relying on, with regard to a D-list exclusion, they must look at cumulative impacts. The problem, I must say, the problem I have with that is that the number of ways to analyze cumulative effects rises as the factorial of all possible effects, and you say consider the cumulative effects of all other projects, well, assume there are 10 other projects. Ten factorial is a spectacularly large number. It's not clear whether it could be analyzed in the age of the universe. This doesn't seem to be a plausible understanding of the way to apply a categorical exclusion. Indeed, it seems to be an argument that no environmental analysis can ever suffice because there are always more cumulative effects to study. And again, Your Honor, I think the critical distinction here is between referred to as a C-list exclusion, and this is really what I asked the court to really focus on, and I think it's a way of delineating the boundaries of our argument in a way that I think should help resolve that concern, because again, with a C-list exclusion, which are definitionally de minimis in impact. So to take Your Honor's question. But no, we're back to my initial problem, which is that you want a full environmental analysis in order to see whether one is necessary, and that's just a challenge, an indirect challenge to be sure, to the very idea of any exclusion or exception. Well, I don't think that we want a full environmental analysis to see one if necessary. What we want is at the very least what the NEPA regulations require, which is an environmental assessment prepared by the Federal Highway Administration, and again, I think this cumulative impacts issue is a critical one, because again, if you take one of these C-list exclusions, which are, for example, merely paving over a pre-existing area, which almost definitionally will have de minimis impacts, and therefore something which is zero or close to zero plus zero will always equal zero. That's not what they applied in this case. In this case, they applied this D-list exclusion, which on its face requires documentation. So I think this goes directly to the heart of Your Honor's question, documentation that significant environmental effects will not result, and they admit that they did not analyze cumulative effects at all, period, Your Honor. So to take an example, they concede that this project will result in 20 acres of farmland destruction, which on its face we submit is potentially a significant impact, but even if you accept that is not in and of itself significant, in the ordinary case, one would at least look at whether or not there are other highway projects in the area that are also resulting in farmland loss, and does that result in a significant impact? Here they admit categorically, if I can use the word, that they did not look at cumulative effects at all. To take another example, in this case, the environmental report concedes that there would be, quote unquote, substantial loss of trees, forests in the area, many of which the local community members said were extraordinarily important to them and to the character of the area. Now, even if you accept that substantial does not equal significant, which I submit that it does, and the government's response was, well, that's semantic, I mean, this court deals with, you know, arguable semantic issues and usually applies plain language analysis to statutes and regulations, we ask the same be applied here, but even if you accept that substantial does not in and of itself equal a significant impact, what they did not look at at all, they admit this, was are there other highway projects, are there other construction activities in the area that are resulting in any additional substantial loss of forests? And so although zero plus zero plus zero, or close to zero plus zero, will always equal de minimis or very little, that is not true when you're talking about substantial forest loss. It's not true when you're talking about more than 20 acres of farmland impact. It's not true when you're talking about more than one and a half acres of wetlands loss. It's not true when you're talking about impacts on several state listed species. It's not true when you're talking about cutting down several of the hills that are in the area that in turn will affect the aesthetic quality of the area. So again, this argument is a very basic one based upon the regulation and the plain terms of the regulation, and their refusal to consider cumulative impacts at all, which we think is required both by Section 7071.117D as well as A, which are correferences, as well as the plain terms of the CEQ implementing regulations, which define categorical exclusions as impacts that are either individually or cumulatively insignificant. They didn't even look at the cumulative insignificant part. And Your Honor, go back to your question for the moment about how do you do that kind of analysis. I would submit that would be a hard question in a case where an agency endeavored to do it, and came in and said, well, we did look at some of the highway impacts that are in the existing area, we looked at other impacts on top of these, and we came to the following conclusion that we couldn't really do a more extensive in-depth analysis. But that didn't happen here. In this case, they've taken the position that they didn't have to look at cumulative effects at all. So nowhere in the 143-page environmental report that Your Honor referred to is there even a mention of cumulative impacts. And we submit that on its – I'm sorry, Your Honor, let me explain what my sort of bottom line problem is. I've been trying to understand what is arbitrary or capricious about the conclusion that the project falls within a categorical exemption, because what you have here is – I mean, they're turning a two-lane road into a four-lane road. They're modernizing a two-lane road. And I don't want to seem the least bit insensitive about, you know, the 20 acres or, you know, all the other ramifications. But I've been wondering, if this project cannot move forward, what repairs to this road can be made? I mean, have you thought about that? Yes, Your Honor, and I appreciate that question. My clients have not opposed any repairs. They were opposed repairs or reconstruction, as it's referred to, that actually take up almost the entirety of what was previously considered a four-lane highway. So in terms of the footprint, it's basically identical. But in addition to that, Your Honor, what my clients have proposed, which would not only be less environmentally impactful, but cost a fraction of the amount. My clients have actually been pushing what we regard from an environmental and fiscal standpoint as the win-win solution, which is to have far less consequential impacts than a $20 million project, which on its face seems to be a major federal project, but would also cost a fraction, which was have far less extensive repairs, don't flatten as many hills, don't take as much of the footprint, but a 45-mile-per-hour speed limit. And Your Honor, when a 45-mile-per-hour speed limit was put into this very stretch of road, as we point out in our brief, it actually lowered the incidence of accidents substantially. And the government's response to that in the environmental report is, well, we didn't have that in place long enough to find out whether or not that would actually solve the problem. Well, the obvious answer to that was, during all these years, why did they not institute a 45-mile-per-hour speed limit for a length of time to find out whether that would solve most or all of the problem? And I submit that may be a reasonable question for the other side, but it also highlights to go back to the original question, which was, what do we get at, or at least my take on the original question in part was, what do we get out of an EIS or at the very least an environmental assessment? And that would be a more thorough analysis of alternatives for solving this very problem at a fraction of the environmental impact and a fraction of the cost. And with the Court's permission, I'll save the rest of my time for rebuttal. Thank you, Your Honor. Mr. Cooper. May it please the Court, Avi Kupfer for the federal appellees. With me at counsel's table is Hazem Issaoui from the Federal Highway Administration and Gabe Johnson-Karp from the Wisconsin Department of Justice, who's prepared to address any questions that the panel has specifically for the Wisconsin appellee. At issue in this case is a routine but important project to rehabilitate and resurface seven and a half miles of state highway in Wisconsin, where the crash rate is 63 percent higher than the state average and the rate of crashes that result in injury is 45 percent higher than the state average. The project fits squarely within an existing categorical exclusion, the Highway Modernization Categorical Exclusion, for which the Federal Highway Administration determined through rulemaking that no significant environmental impacts will result. And importantly, Citizens Group doesn't challenge that rule here. Rather, their argument is that the circumstances of this particular project are so unusual that it was arbitrary and capricious for the Federal Highway Administration not to conduct additional NEPA review in this case. This panel should affirm the decision of the district court that that isn't the case, because one, FHWA and the Wisconsin agencies collaborated over four years on a 140-page environmental report, and two, the resulting finding that this project does not present unusual circumstances was reasonable. Before moving to either of those two points, I think it's important to just quickly address what NEPA required of the Federal Highway Administration in this case to invoke a categorical exclusion, because Citizens Group uses a lot of NEPA's language, but they don't anchor that in any actual statutory or regulatory requirement. As mentioned, there is a Highway Modernization Categorical Exclusion, and what that means is that FHWA already did the work in a rulemaking to determine that these types of projects don't have significant environmental effects. All that's left at that point, under the CEQ regulations, is to determine if this project presents extraordinary circumstances. That's the CEQ regulatory language, and FHWA's NEPA regulations do that in two ways. The first way is that they require appropriate environmental studies with the state if the project could involve unusual circumstances, such as a substantial disagreement on environmental grounds. And the second way for, quote, delist categorical exclusions like that invoked here, is documentation showing that no significant environmental impacts will result. Now here, the Federal Highway Administration really want... Mr. Kupfer, forgive me. You know, it seems to me that the threshold question here is whether there is a decision of a federal agency for this Court to review. Where in the record will we find the independent review that the FHWA claims it gave the state's report? I understand that the FHWA edited the report and made certain suggestions, but where is the evidence that a Federal agency independently reviewed this report and its conclusions? Your Honor, the first place to look for that evidence is the very first page of the evidence to this appeal, which is the page on which the FHWA officials adopted the findings of the report and signed a statement indicating that they had reviewed the report, that a categorical exclusion was appropriate, and that they had addressed public concerns. So that first page where they adopted the findings of the report and attested to that fact through signature is the first place to look. And that's what you're saying is the independent review? I think, Your Honor, that's indicative of the independent review, but in addition... No, I'm asking, yeah, but I don't want indicative. I would like to know where in this record the independent review exists. Well, as the district court found, the record is replete with e-mails back and forth, meetings, meeting notices, very importantly, a letter from the FHWA head agency official in the region to the Wisconsin Department of Transportation explaining in the draft environmental report some of the problems that FHWA saw down the pipeline. And really, I mean, the record is full of indications of this back and forth, iterative process that occurred over four years. Is there something that I could actually look at on a page or pages that is entitled independent review? Is there such a thing or... No, Your Honor. There is no such thing in this case. I think the thing that most closely speaks to that is, as I mentioned before, the very first page of the appellant's appendix. But I would note, and Citizens Group argues that some sort of a separate document was required. Not only does NEPA not require a second document, but producing a second set of evaluation to indicate that FHWA had done separate evaluation would have contravened NEPA's charge to produce a single environmental document with the state agency when one is feasible. And the CEQ regulations charge to produce joint environmental review. And throughout this, the CEQ regulations are littered with references to the need to conserve resources and not be duplicative. So this sort of review, Your Honor, is typical in these sorts of cases where the Federal Highway Administration is acting as a funding agency. The agency that's closest to the ground that best understands the actions that are going to be taken is the state agency. So they initially prepared the environmental review. In fact, the- I'm aware of that. And of course, I'm also aware of the fact that the state has a great incentive to find the project passes federal environmental review because that gives the state access to federal funds. So, again, I wondered if the FHWA simply reviewed the paper record created by the state or whether the federal agency conducted a field review of the project. In other words, when the state said the impact to wetlands or trees was not significant, did the FHWA just let the state deferred for it? Or did it look at the underlying factual record to see if that was supported? I am trying to figure out what level of participation is necessary for a federal agency to discharge its duty. Your Honor, there's nothing in FHWA's regulations or the CEQ regulations that require FHWA to prepare the environmental document. And I think our best answer is the one I gave before, which is that, one, the very first page of that appendix submitted by the appellants demonstrates that the FHWA adopted the findings of the state agency and attested to that through signature. And second, the administrative record, some of which the federal appellee is attached in a separate appendix, showing the back and forth communication over four years, which of the project, it's the project team, the Wisconsin FHWA project team that reviewed this over multiple years, and they're really back and forth with the state agency. So I think those are the two best places to look in the record. Okay. Now, let me just go a little further, because it seems to me that we're supposed to review the work of the federal agency, and the document that is under review was written by the state and then signed on the cover by the federal agency. To me, to be perfectly honest, it's like taking a math test and saying the answer is 12 without showing any of the work on how you got to the answer. So yeah. With respect, Your Honor, I need to really understand the level of participation in the process and what we're supposed to review. And to me, it sounds like you're saying review the first page of the appellant's appendix. Well, no, Your Honor, what this Court should review is the decision of the federal agency that this project didn't present any extraordinary circumstances. That decision, which is documented in the first page of that appendix, is based off of that 140-page environmental report. So what's being reviewed is the decision. The basis for the decision is this extensive environmental review, which was put together in the first instance by the state agency, but reviewed, collaborated on, and guided by the federal agency. Not to belabor the point, but again, there's nothing in NEPA, the CEQ regs, or FHWA's regulations, NEPA regulations, that require anything additional of the federal agency. The decision is what is being reviewed. The decision to invoke a CE and the decision that this project didn't present extraordinary circumstances. The basis for that decision is this environmental report. Mr. Kupfer, can you give us an estimate of the number of person-hours of work that went into the report that concluded there's no significant impact? Your Honor, I'm not sure. I do know that there were over four years you had a team at FHWA reviewing this report, and you also had a team at Wisconsin. The Wisconsin attorney may be able to better speak to the Wisconsin person-hours that went into this, but it was a pretty massive undertaking, and the reason it was is because there was a 2001 litigation over this same stretch of highway, and they were aware of some of those community concerns. With my remaining time... This was four years, lots and lots of work, over a seven-and-a-half-mile modernization program? That's right, Your Honor. That leaves it as a two-lane road. Yes. The lanes are being expanded by a foot each to bring it up to standards for... I've driven on a lot of narrow roads, I understand. Thank you. Yeah. If there are any specific questions about the various impacts that appellants allege, I can address those. One I did want to briefly discuss, the idea of a speed limit. This is in the federal appellee's brief, but the FHWA and the Wisconsin Department of Transportation did consider a speed limit reduction. They ran studies with the University of Wisconsin Traffic Operations and Safety Lab and looked at research from the Transportation Research Board, and what they found was that reducing... And the Wisconsin Traffic Operations and Safety Lab actually posted a 45-mile-an-hour speed limit on this road for a period of time to study the effects, and what they found was that reducing the posted speed limit below what the highway is designed to accommodate increases the variance of vehicle speeds and actually creates unsafe driving conditions. But in addition, the project goals here were to address poor pavement conditions and safety concerns, and even if all the cars had complied with that lower speed limit and the research indicated that they didn't, nowhere would that address the pavement issues, nowhere would that address the safety concerns. The lanes were too small to accommodate the trucks that were driving down this highway. There were obstructions in the clear zone, and they needed to bring this highway up to federal and state standards to accommodate the vehicles that were using it. I want to address one other point that you brought up, Judge Easterbrook, about the appellants wanting an environmental impact statement to see if one is necessary. I think one additional point that appellants really haven't addressed here is what they want through an environmental impact statement. The federal appellees did not make a prejudicial argument, but I think it really gets to the thoroughness of this environmental review. Certainly appellants disagree with the state and federal agencies on their conclusion, but they don't point to anything the agencies didn't consider. They don't point to any cumulative impacts, anything that FHWA missed with respect to cumulative impacts. Again, and only because appellants did hammer home this point on cumulative impacts, the CEQ regulations say that when you're conducting a categorical exclusion, when you decide that a project falls within a categorical exclusion, rather, no cumulative impacts assessment is necessary. Now, if in the future they wanted to expand this highway and decided to conduct an environmental impact statement, they would do a cumulative impacts analysis, and that analysis would take into effect this project. So that's where some of these effects would get taken into account. Now, if all they're doing is these highway modernization projects, the agency found through a rulemaking that those categorically don't have significant environmental impacts individually or cumulatively. So again, that is a zero times zero times zero situation, but the second that an EIS would be done, they would take into account all of those prior projects. I see I'm out of time unless there are further questions we ask that the panel affirm. Thank you very much, Mr. Cooper. Mr. Glitzenstein, anything further? Very briefly, Your Honor. In fact, the record does not reflect any independent evaluation. The cover is a rubber stamp, and to the contrary, the back and forth that was referred to actually acknowledges that this project should not have been, in effect, categorically excluded. If you look at pages 118 through 120 of the appendix filed by the federal government, the federal government specifically said that you should indicate that this project is a highly controversial project. One of the exceptions to invoking a categorical exclusion is where there is substantial controversy on environmental grounds. And sure enough, in the environmental report itself, the state indicated that this was a highly controversial project. So on its face, the plain language of their own categorical exclusion rejects the indication of a categorical exclusion here. Is the theory there that if enough people object, that at least an EA is required? Your Honor, the theory is that they object on environmental grounds, and here we have precisely those kinds of objections. If you have to litigate these cases, all you have to do is say, we objected, therefore it's controversial, therefore there can't be a categorical exclusion. That can't be right, can it? Now, Your Honor, our position is that where the environmental report itself effectively concedes significant impacts by saying a substantial number of trees will be destroyed, 20 acres of farmland, prime farmland, wetlands with no identified mitigation, we're not just talking about opposition to the abstract. Cumulative effects from other highway projects. This is exactly the kind of controversy that the regulation and the court's case law talks about. Thank you, Your Honor. The case is taken under advisement, and the court will take a brief recess before calling the third case.